Good morning. May it please the Court, Vadim Zaspolsky for the petitioner, Ilya Kudryashov. Your Honors, my goal today is to give you the best oral argument you've ever heard in your distinguished legal careers. I'm hoping tomorrow you all wake up and you write me personal in the letters to my address of 500 North Brand, tell me how great I was. And if you don't get any, will you be terribly disappointed and just put your head in the bag? Life will go on, but if I run into you in six years, you will not remember my name, you will not remember that I'm located at 500 North Brand, and you will not remember what day of the week this was. Is that the statute of limitations? That's basically part of the things the judge requested of the client in this adverse credibility finding. If I go further, if I say as I'm leaving this beautiful courthouse and I step on one of the steps and I fall and I hit my head, and I get a traumatic brain injury with memory loss, and I'm hospitalized at beautiful Huntington Memorial Hospital, in six years from now, would you request that I remember the type of medication I took, which was a weird sounding name of neutropil that the client had never heard of before? Would you request that I remember all the procedures I received? Would you require me to remember the exact time that I spent in the hospital? Well, this judge did. Despite the fact of these issues, my client had provided discharge instructions. So if I provided you with the discharge instructions from Huntington Memorial Hospital, which had the prognosis, the diagnosis, medical treatments, and all relevant medical documentation, I think it's reasonable that the court would see that I've corroborated my testimony of events that took place six years ago after a brain injury that was caused by the police. Where is the evidence that this was a brain injury? It's in the medical document, Judge. If I can give it to you on response, Judge, I'll give you the exhibit number. Why didn't your client include the details about the 2001 and 2003 incidents of harassment in his initial declaration? Well, I don't think he had it prepared by an attorney, Your Honor, and this was a non-sophisticated client. Basically, this was years of abuse his whole life because of this minority religion. So even when he did do these supplementary declarations that the judge required because he wanted us to testify under grava, even then he was like, well, there were many, many incidents like this. So even when he did submit additional documents, he was like, well, there are many incidents like this. Well, I guess he couldn't document his whole life, years and years of abuse for being a malecon into a couple of declarations. And I'm pretty sure his initial declaration was prepared by a non-lawyer. Aren't the Armenians also Christian? Yes. This is a different Christian. Right. Basically, what this religion is, they're derived from, they're old believers. The word is derived from the Russian word milk drinkers. This is a religion that you cannot convert to, you cannot marry into, you can only be born into. Part of the reasons, well, and that's why they're a religious minority because their numbers can never increase because no one can convert and become a malecon. And part of the reason they are disliked in Armenia is similar to Jehovah's Witnesses because they're pacifists. They don't bear arms. Wasn't he in the military? He was, but there's different. You're talking about would you remember that you fell down the stairs six years from now. But I'll tell you one thing, having been in the military 40 years ago, I still remember the dates that I was there. And it seems to me that he said he was there in the military 98 and 99 and then at a different location, different time, said he was in the military in 2006. No, I don't think he ever said that he was in the military in 2006. He served in the Soviet Army because it was a draft and the Soviet Army had numerous noncombat units. The Armenian Army does not. So if you join the Armenian Army these days, you have to bear arms. He never said he was in the military in 2006. In 2006, that's when he had the incidents of abuse at the hands of the police at the park and at the religious gathering where the police burst in and hit him and he was detained. You know the law here and the Real ID Act really limits us and usually just permits us to overturn the IJ's credibility determination in exceptional circumstances. So what's your best point that you want to make or two points as to why this is exceptional? Sure. My point is that Rand V. Holder controls. Dates should not form the basis of an adverse credibility finding even in Real ID Act cases. These are to request someone to remember Nutrapil, to request after a brain injury to remember the exact dates of being in the hospital, to request what day of the week it was six years ago. No reasonable fact finder should make these determinations on a client. It's impossible to remember. Impossible. You consider those date inaccuracies as being trivial? Trivial, especially since he had corroborating documents to support a medical treatment. And if we talk about Rand V. Holder, the petitioner in Rand V. Holder did not remember the year of the persecution and gave the court a three-month gap where this could have happened. And the court held that inconsistencies in dates cannot form the basis of an adverse credibility finding. And did the government challenge the medical documents? They sent it to the FDL lab in 2008, right when we submitted it, and the report was returned and they never questioned authenticity. I think the one issue they raised was the seal was an inkjet seal, but there's no evidence or no one ever discussed or argued that inkjet seals were not used in 2006 at this facility. So, you know, at times the field offices in Los Angeles have sent documents abroad, but in this case they never challenged it. So we have nothing to argue that it wasn't anything but genuine. Do you want to say the rest? I'll reserve. And I'll judge. I'll give you on reserve where the medical document is. Good morning, Your Honors. May it please the court, Andrew Nsinga on behalf of the Attorney General. Normally I'd stand before this court and emphasize the record, but given what this court just heard, I would ask the standard of review. Given what this court just heard, I'd ask this court to be reminded that it's reviewing this case on the record. Memory loss? We would like an AR cite for that. Your Honor is correct. He did initially say he served in the Army in 2006. As to it wasn't prepared by an attorney, well, he didn't raise that claim before the board. But it was prepared. AR 363 says it was prepared by someone else. So I'd ask this court to be cautious when looking at the record assertions by petitioners. Let me ask you a few questions. The IJ found Mr. Khrushchev testified credibly about the general facts underlying the 200 events, but that he was inconsistent on the details, that the petitioner was inconsistent on the details. Why does the petitioner's credibility on the medical items even matter that much if we have hospital records confirming the precise details? What difference does he make if he was given an EEG or a blood test if the records already tell us that it happened? Usually, you know, that's the whole point of the questioning is to determine whether what they were saying was the truth. Correct, Your Honor. But first we have to say that the standard view here is the totality of circumstances. Of course. We don't just look at this issue in isolation. So we have to look at the process as a whole. Here, the IJ, looking at the whole process, took, accepted the persecution, the core details of the persecution that he alleged. The immigration judge accepted that he had faced some discrimination, which is clear in the record that some Armenians don't like Malakand or Jehovah's Witnesses as well. Discrimination, it was a beating which put him in the hospital for one to two weeks. That's a tough type of discrimination. Well, Your Honor, except the immigration judge essentially found that that didn't. Essentially, he did find that the bad incident was not credible. Again, this is the incident. He didn't go to the hospital at all? Is that what you're saying? Essentially, the immigration judge found that this did not occur at all. Well, where did the immigration judge find that? Would you give me a citation? Well, it's implicit in the entire decision. Implicit? Where did he say this applicant is a phony, he didn't go to the hospital at all? Well, that's the entire point of the immigration judge's decision by saying he doesn't find that this incident was credible. He says you testified that he was in the hospital for one week, and then the record shows that he was really in the hospital for two weeks. He was downplaying in his statement how long he was in the hospital. The records show that the injury was even more severe than what he said. It was helping him, not harming him. Well, Your Honor, except we have to look again at the non-responsiveness and the inconsistency with his own statement. The government didn't voice his statement upon him. He testified inconsistently. What statement are you talking about? His own statement, Your Honor. A statement about what? The date of when this occurred. Oh, now you've shifted from the hospital. You're going to leave that to one side. Now you're talking about the difference between April 7th and April 29th. Big deal, right? Six years later. The difficulty is we can't view any of this in isolation. We don't stay with jurors. You don't want to talk about that. You want to talk about something else. Well, Your Honor, so if we – Every time we were talking about an inconsistency and we started zeroing in on the insufficiency or the triviality of the inconsistency, you want to go to another inconsistency. I understand. That's the totality of the circumstance. Exactly, Your Honor. Oh, of course. Okay. How does it go to his credibility? Judge Bea asked this, and I think I understood your answer. How does it go to his credibility if he says, I was in the hospital for two weeks and it's actually one week? Then he's embellishing. So I think that goes to his credibility. But when the immigration law judge says, How long were you in the hospital? He said, I think about a week. And then it's actually two weeks. How does that undermine his credibility? Well, Your Honor, I think the difficulty sometimes is that adverse credibility is not purely – it's often viewed as lying, but it's also about a sufficiency of the evidence. If a plaintiff in a tort case says, well, here's my statement and this occurred, and then comes and testifies and it's wrong or inconsistent, a fact – I was in the hospital two weeks instead of one week – only supports that his injury was greater than he even initially declared, which supports his entire allegation. I'm having trouble following your argument here. Well, Your Honor, the point is not that necessarily he's lying because he's embellishing. Embellishing isn't the – He's not embellishing, though. Contra-embellishing. Well, but he doesn't understand his own claim. See, the difficulty about petitioner example that they just provided is, well, look, I trip, I hurt my head. First of all, memory loss, that's not in the record. But it doesn't look like you're challenging the records, the hospital records. Well, except – So if we accept that, like you – I mean, you haven't challenged them. We have in the record before us whether this injury that occurred after this beating, that he was in the hospital a week longer than he claimed, which supports that his injury was greater than even he's saying. And so I'm having trouble how you're saying that that's embellishing. If you're saying that that's a detail that he was incorrect on and so we should question his credibility, I am trying to figure out how you reconcile that with Wren or Shresha, where if it's a trivial detail, how does that significant and bear on the ultimate outcome here? Triviality is in context. Triviality depends on what is being occurred around the testimony. He's nonresponsive. Then he gives a date that's inconsistent with his statement and the medical certificate. Then he gives – he can't give details. And then he's inconsistent about how long he was in the hospital. Is that your best argument? Well, they all have to be considered together, yes, Your Honor. A reasonable fact finder isn't compelled. Now, Your Honors may disagree. Maybe if Your Honors were the fact finder or Your Honors were on a jury, maybe you would not find the petitioner not credible. But it's not unreasonable and the record doesn't compel when we have a variety of concerns here that have to be viewed in the totality. And we have to also keep in mind, petitioner says, well, now if I had an accident outside this court, how would I remember this six years later? If you have a lawsuit in which this is your entire claim, you better remember it. You don't walk into court as a plaintiff and expect a jury to say, well, you had an injury six years ago. I know this entire lawsuit is about this. But the fact that you can't testify consistently with the statements you provided, no district court judge is going to say, jury, you have to disregard that. What's your best case that you want to highlight for us here today? Well, honestly, it's simply the Real ID Act, Your Honor. The Real ID Act overruled this court's case law. Now, Shrestha's notion of triviality was a misspelling. Let me ask you this. Is there any claim that the IJ requested, after finding credibility in favor of the petitioner, requested further corroborating evidence and it was not provided? No, it did not request corroboration. I think part of the difficulty, though, what petitioner now is arguing before this court for the first time, is suggesting the medical certificate is itself corroborated assault. It's not. It says he was assaulted, he had a brain injury, and then that's it. That's all it corroborates. Now, I want to be clear, what I'm saying is not what the agency found. You're conceding that there was a brain injury? No, Your Honor. We're not conceding there was a brain injury. Because you just said that, didn't you? He claims there was a brain injury, yes. But obviously the immigration judge does not believe this incident occurred. And if this is the incident he claims, I fled my country, I left my wife and child behind in Armenia, now I want protection from the United States government, here's my testimony. It's not consistent with the evidence he did provide. Now, the immigration judge did not require corroboration. What petitioner now says is that document is itself sufficient. He did not make that argument for the immigration judge or the board, and that can't be a basis for overturning. Now, as I said, this is not what was found, but petitioner's assertion? You said Tresho was about misspelling, but Wren was about inconsistencies or minor discrepancies in dates, and that they cannot be viewed as attempt by the applicant to enhance his claim, but they have no bearing on credibility. It depends, again, on context. Triviality depends on context. There is not a legal holding that a date can never be a basis for an inconsistency. If my entire claim, for example, is what's your birthday, and I can't provide my birthday, it's fairly relevant. When this is the reason you fled your entire country and you left your wife and child behind, you've been in process for four years. You submitted a statement. You submitted a medical document. You need to testify consistently. And the record does not show that that, if I just finish one point, Your Honor, the immigration judge did not doubt the medical record, but AR 457 that the forensics did find that the seal was simulated. It's not before the court, but to suggest that this document is sufficient is not before the court. Thank you very much for taking the test of your time. Rebuttal? Your Honor, administrative record, page 345. If I could read from the second paragraph, the patient was admitted in the department with complaints, dizziness, severe pain in the lumbar area. Multiple bruises were observed on the body as a result of beatings, partial memory loss. Lower complete diagnosis, post-traumatic encephalopathy with cephalgia, scalp, brain trauma. If we were in civil court, as counsel stated, I would be able to come up to my client and say, Sir, is this the medical document we received from the hospital? Sir, is this all accurate and complete? He would say yes, and we would never have an issue with it. That's how it would go in civil court. In addition, on page 38 of the record, the judge, I think he's having a hard time with his credibility finding because he picks these things that are not inconsistencies, and he states positive weight goes to the respondent's testimony and tangible evidence that there was consistency that generalized events that took place in 2006 occurred to the respondent, and the basis for those events was also consistent. But under the totality of the circumstances, I find events present in 2006 cannot be considered credible. Under the totality of circumstances, it has to be considered credible, because it thinks he points out what day of the week it was, what's the name of this medicine you took six years ago. It doesn't make sense. Under the totality of circumstances, he absolutely was credible. And then the judge further held that if he was credible in 2006, then past persecution has been established. In addition, I would also argue that this man has gone through a lot through an ordeal his whole life. He's had incidents with kids throwing stones at him. He was beaten up by children at the direction of adults. At school, he was ridiculed and abused by the teacher because he couldn't join the Pioneers. Is there any evidence that his family was persecuted? I don't have any, Your Honor. That was not in the record. But the fact that he had to move his family out of the city and go to a small village and hide basically from authorities, to me, is an indication that it wasn't safe for him. And since the persecution was at the hands of the authorities, persecution is countrywide. I rest, Your Honor. Thank you very much. Any questions? The case of Kudryashov v. Sessions is submitted. Thank the counsel for their presentation. And we'll go to the next case.
judges: Bea, Murguia, Molloy